IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| L & M AUTO REPAIR, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>FEDERATED MUTUAL INSURANCE COMPANY,<br><br>   Defendant. | Case No. 6:23-cv-01203-JAR-TJJ |

**MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY APPRAISER**

Defendant, FEDERATED MUTUAL INSURANCE COMPANY ("FEDERATED"), by its attorneys, Lewis Brisbois Bisgaard & Smith LLP, for its Memorandum in Support of Its Motion to Disqualify Appraiser, states as follows:

**BACKGROUND**

This matter arises out of a claim by L&M under a policy of insurance issued by FEDERATED (the "Policy") for damages resulting from a hailstorm claimed to have taken place on April 29, 2022 (the "hailstorm") at the property owned by L&M at 1116 W 43rd St S., Wichita, KS (the "Property"). Petition, paras. 2, 3, 7; Defendant's Response to Petition ("Response"), paras. 2, 3, 7. Following the hailstorm, L&M retained Wichita Home Specialists ("WHS") under a "Contract for Services, Assignment of Benefits, Direct Payment authorization, and Hold Harmless Agreement." Affidavit of Kent Garretson ("Garretson Aff."), para. 2; A copy of Mr. Garretson's Affidavit is attached hereto as Exhibit A. WHS subsequently prepared estimates for the repair of the claimed damage from the hailstorm, including one dated June 8, 2022, that estimated covered damages from the hailstorm to be $335,505.15. Garretson Aff.. para. 3.

FEDERATED received a Sworn Statement in Proof of Loss ("Proof of Loss") from L&M on May 24, 2023. Garretson Aff., para 4. The Proof of Loss presented a claim in the amount of $335,505.15, and a copy of WHS June 8, 2022 estimate was attached thereto. Garretson Aff., para. 4.

Kent Garretson, FEDERATED's Field Team Supervisor handling L&M's claim, responded to the Proof of Loss on June 13, 2023, advising that FEDERATED disagreed with the amount of the loss as reflected in WHS June 8, 2022 estimate and demanding an appraisal of the amount of loss pursuant to a provision of the Policy that provides as follows:

> **2.  Appraisal**
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.**  Pay its chosen appraiser; and
>
> **b.**  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

A Certified Copy of the Policy is attached hereto as Exhibit B. Garretson Aff., para. 5.

In his June 13, 2023 letter, Mr. Garreton advised that FEDERATED would designate its appraiser by separate correspondence. On June 16, 2023, pursuant to the terms of the Policy, Mr. Garretson advised the insured's principal, Caleb Shrout, that FEDERATED had assigned Bob Morris of Morris Claim Service in Benton, Kansas to act as its appraiser. Garretson Aff., para. 6.

On June 19, 2023, Mr. Shrout sent an email to FEDERATED advising that he had assigned "Jerry Wade" to be L&M's appraiser, referring to Jeremy Wade Cannefax. Response, para. 7; Garretson Aff, para. 7.

Mr. Garretson, in performance of due diligence in accordance with the requirement of the Policy that the parties' appraisers be "competent and impartial," conducted some online research concerning Mr. Cannefax. Garretson Aff., para.8. He accessed WHS's Facebook page and discovered that Mr. Cannefax had made several posts on that page that Mr. Garretson considered to be indicative of a relationship between Mr. Cannefax and WHS as well as a lack of impartiality on the part of Mr. Cannefax. Screenshots of those posts follow:





Garretson Aff., para. 8.

It should again be emphasized that Mr. Cannefax was making these posts on the Facebook page of Wichita Home Specialists, the company that submitted the very estimate on which L&M's $335,505.15 proof of loss was based.

Concerned about the apparent relationship between Mr. Cannefax and that company, Mr. Garretson sent a letter to Caleb Shrout of L&M on July 14, 2023, asking for detailed information concerning the extent of any financial relationship with the insured's contractor and any financial interest Mr. Cannefax might have in the outcome of the appraisal and, in particular, any agreement for compensation he might have with Wichita Home Specialists. Garretson Aff., para. 9.

Mr. Cannefax responded by email on July 19, 2023 stating that he thought the request for his "finances" was "unreasonable" and to which was attached a "Declaration of Impartiality" on the stationery of a company supposedly named "Blue Chip Consulting, Inc.  Garretson Aff., para. 10.  Although Mr. Cannefax made a blanket representation in the "Declaration of Impartiality" that he had no "financial or personal interest in the outcome of the appraisal other than my fee as an appraiser/umpire" or that he had any "current or previous relationship" with any entity that would perform repairs or any service to L&M, he did not mention Wichita Home Specialist or elucidate on the apparently close relationship he has with that company as demonstrated by his several posts on its Facebook page.  He also did not address the posts on that page that demonstrate a bias against insurers.

Mr. Garretson responded with a letter to Mr. Shrout dated August 22, 2023, pointing out that Mr. Cannefax had not addressed his apparent "close and ongoing relationship" with WHS or whether he had any sort of compensation agreement with WHS.  That letter also pointed out that Mr. Cannefax had not disclosed his current employment, there being no record of a company named Blue Chip Consulting, Inc. with the Kansas Secretary of State.  Mr. Garretson also stated that, while FEDERATED was not waiving its prior more expansive request for financial information, it would request "any and all documents or records reflecting any compensation or other valuable consideration Mr. Cannefax received from Wichita Home Specialists during a five-year period prior to the date of this letter."  Garretson Aff., para. 11.

FEDERATED received no response to this second letter.  Instead, it was served with a copy of L&M's Petition to Appoint Umpire on August 24, 2023.  Garretson Aff., para. 12.  Interestingly, notwithstanding that the appraisal process was still in the appraiser selection phase, L&M alleges in its Petition that the parties "have not been able to agree upon an umpire." Petition, para. 9.  In the first instance, it is the *appraisers*, not the *parties*, that select the umpire but, in fact, the allegation is simply untrue; the stage at which an umpire should be selected has not been reached because of FEDERATED's concerns over Mr. Cannefax impartiality.

On October 5, 2023, after this Memorandum was fully drafted but before it was filed, counsel for L&M served an Affidavit of Jeremy Cannefax.  A copy of that affidavit is attached hereto as Exhibit C.  In that affidavit, Mr. Cannefax asserts that he is the owner of Blue Chips Consulting, Inc., that there is no "business relationship between" WHS and Blue Chip (sic) Consulting, Inc. or Benjamin Hoffman, that WHS and Benjamin Hoffman are not employees of Blue Chips Consulting, Inc., that Blue Chips Consulting, Inc. does not pay WHS or Benjamin Hoffman and that WHS and Hoffman are "independent third parties" "not associated with Blue Chips Consulting, Inc."

In the first instance, the records of the Kansas Secretary of State show the corporate status of Blue Chips Consulting, Inc. as "Forfeited – Failed to Time File A/R."  See Exhibit D.  Indeed, Blue Chips Consulting, Inc. does not appear to have filed an Annual Report since it filed its Articles of Incorporation in June of 2019.

Perhaps more significantly, Mr. Cannefax's affidavit focuses on the relationship between this defunct company and WHS but does not mention at all the relationship shown to exist by his Facebook posts between himself as an individual and WHS.  Interestingly, moreover, the affidavit avers that defunct Blue Chips Consulting, Inc. does not pay WHS, but at no point does Mr.

Cannefax address whether he has received any sort of valuable consideration from WHS, a matter of greater concern. Most importantly, the affidavit does not explain the clearly biased Facebook posts Mr. Cannefax has made on WHS's site. At best, the affidavit points to the need for further information concerning Mr. Cannefax's relationship with the insured's contractor.

On October 9, 2023, L&M's counsel provided the Affidavit of Ben Hoffman, asserted to be a member of WHS. A copy of that affidavit is attached hereto as Exhibit E. This affidavit claims that there is no "business relationship" between Mr. Cannefax, Blue Chips Consulting, Inc. and WHS, that WHS does not pay either Mr. Cannefax or Blue Chips Consulting, Inc., and that neither is an employee of WHS. Again, though, no explanation is offered for the relationship reflected in Mr. Cannefax's Facebook posts or his evident partiality against insurers. Moreover, partiality does not depend on a formal "business relationship" or monetary compensation but, as Tenth Circuit authority shows, can exist where evidence shows a close ongoing professional relationship between the appraiser and an insured's representative. *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 868-870, 2018 U.S. App. LEXIS 8114, *8-11 (10th Cir. 2018).

## SELECTION OF AN UMPIRE IS PREMATURE UNTIL L&M APPOINTS AN IMPARTIAL APPRAISER

The 10th Circuit U.S. Court of Appeals, considering an appraisal provision identical to the one before this Court, endorsed a definition of "impartiality" developed by the District Court in the context of ordering disclosure by the parties of information that might bear on the parties' selected appraisers' impartiality:

> An individual who has a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party may not serve as an appraiser. Each appraiser must, after making a reasonable inquiry, disclose to all parties and any other appraiser any known facts that a reasonable

> person would consider likely to affect his or her impartiality, including (a) a financial or personal interest in the outcome of the appraisal; and (b) a current or previous relationship with any of the parties (including their counsel or representatives) or with any of the participants in the appraisal proceeding . . . . Each appraiser shall have a continuing obligation to disclose to the parties and to any other appraiser any facts that he or she learns after accepting appointment that a reasonable person would consider likely to affect his or her impartiality.

*Summit Park Townhome Ass'n*, 886 F.3d 863, 866, 2018 U.S. App. LEXIS 8114, *2-4.

In that case, the 10th Circuit affirmed the District Court's finding that its order pertaining to the disclosure of information bearing on the impartiality of the parties' appraisers had been violated by the insured's attorneys' failure to:

- Disclose the extent of their current or previous relationship with the insured's appraiser, including the fact that they had previously worked together on appraisals for 33 other clients even though they claimed that there was no "significant prior business relationship" with the insured's appraiser;

- Disclose the extent of the advocacy by the insured's appraiser on behalf of insured's generally, including, for example, teaching a class on how to "harvest the claim money" from an insurer during an appraisal.

*Summit Park Townhome Ass'n*, 886 F.3d 863, 868-871, 2018 U.S. App. LEXIS 8114, *8-14

Here, Mr. Cannefax has refused to be fully transparent concerning his relationship with the contractor, WHS, on whom the insured has relied in presenting its sworn claim, even though his comments on WHS' Facebook page clearly show that there is a close and ongoing relationship. Indeed, Mr. Cannefax's posts on WHS Facebook page emphasize the general pro-insured/anti-insurer advocacy prevalent on that page, where, for example, WHS shared the following post:



FEDERATED encourages the Court to access WHS' Facebook page at www.facebook.com/wichitahomespecialists/ to see for itself the many plainly pro-insured/anti-insurer posts at that site.

Here, Mr. Cannefax' impartiality is clearly in question because of his apparent alignment with the contractor whose estimate forms the basis for the insured's sworn claim. Given that alignment, it is difficult to envision Mr. Cannefax approaching WHS's estimate with the kind of critical assessment that should be the hallmark of an unbiased consideration. Further, Mr. Cannefax's posts clearly demonstrate a bias against insurers, whether considered alone or in the context of the other posts on WHS's Facebook page.

In short, since the insured has yet to select an impartial appraiser, the appointment of an umpire is premature. At this juncture, FEDERATED requests that this Court deny L&M's Petition, that it order L&M to select an impartial appraiser and that it hold further proceedings to appoint an umpire in abeyance pending the inability of the parties' impartial appraisers to agree on an umpire. In the alternative, FEDERATED requests leave to conduct limited discovery bearing on the impartiality of Mr. Cannefax.

Wherefore, FEDERATED MUTUAL INSURANCE COMPANY respectfully requests that this Honorable Court grant its Motion to Disqualify Jeremy Cannefax as appraiser for Plaintiff L&M AUTO REPAIR LLC, order Plaintiff to select an impartial appraiser and hold further proceedings to appoint an umpire in abeyance pending the inability of the parties' impartial appraisers to agree on an umpire.  In the alternative, FEDERATED MUTUAL INSURANCE COMPANY requests leave to conduct limited discovery bearing on the impartiality of Mr. Cannefax.

/s/ Jeremy K. Schrag
Jeremy K. Schrag, KS #24164
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone:  (316) 609-7900
Facsimile:   (316) 462-5746
jeremy.schrag@lewisbrisbois.com

*Attorney for Defendant FEDERATED MUTUAL INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, the above Memorandum in Support of Its Motion to Disqualify Appraiser was filed using the court's CM/ECF System which will send notice to all counsel of record.

/s/ Jeremy K. Schrag
Jeremy K. Schrag