IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

L & M AUTO REPAIR, LLC,

                Plaintiff,

v.

                                     Case No. 23-CV-1203-TC-TJJ

FEDERATED MUTUAL INSURANCE
COMPANY,

                Defendant.

## REPORT AND RECOMMENDATION[1]

## NOTICE

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), may file written objections to this Report and Recommendation. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

## REPORT

### I.    Factual and Procedural Background

This case arises out of a dispute between an insured party, Plaintiff L&M Auto Repair, LLC, and its insurer, Defendant Federated Mutual Insurance Company, over damages to Plaintiff's

---

[1] Plaintiff initiated this action by filing its Petition to Appoint Umpire. The undersigned Magistrate Judge finds a decision appointing an umpire would be dispositive and therefore proceeds by Report and Recommendation under 28 U.S.C. § 363(b)(1) and Fed. R. Civ. P. 72(b)(1).

commercial property located in Wichita, Kansas. Plaintiff made a claim under its commercial

insurance policy issued by Defendant (the "Insurance Policy") for roof damages caused by a

hailstorm on April 29, 2022. The Insurance Policy includes the following provision setting out the

required appraisal process if the amount of loss is disputed:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: (a) pay its chosen appraiser; and (b) bear the other expenses of the appraisal and umpire equally.[2]

Defendant disputed the amount of Plaintiff's damages estimate and demanded an appraisal.

Plaintiff and Defendant each selected an appraiser. Plaintiff filed a Petition to Appoint Umpire in

the District Court of Sedgwick County, Kansas, on August 18, 2023,[3] alleging Plaintiff and

Defendant's appraisers were not able to agree upon an umpire and requesting the appointment of

an umpire pursuant to the terms of the Insurance Policy.

Defendant removed the action to this Court on September 21, 2023, and filed its Answer

(ECF No. 11) and Motion to Disqualify Appraiser on October 12, 2023. Plaintiff failed to respond

to the motion or to participate in the initial scheduling conference in the case. The Court therefore

granted Defendant's uncontested motion, disqualified Plaintiff's selected appraiser under the terms

of the Insurance Policy for lack of impartiality, and ordered Plaintiff to designate an impartial

---

[2] Insurance Policy, Ex. B to Def.'s Mem. In Supp. of Mot. to Disqualify Appraiser, ECF No. 13-2, at 32.

[3] State court Petition, ECF No. 1-1.

appraiser by January 31, 2024.[4] Plaintiff filed its Designation of New Appraiser on January 30, 2024.[5]

The Court subsequently conducted a status conference and set a number of deadlines for the parties to submit status reports regarding their appraisers' efforts to reach agreement on an umpire. However, on April 19, 2024, Plaintiff and Defendant each filed a Status Report[6] indicating their selected appraisers were unable to agree on an umpire. Plaintiff requested the Court select the umpire and proposed two candidates for the Court's consideration, one of whom was Toby Johnson ("Johnson").[7] Defendant similarly proposed two umpire candidates, one of whom was Bill Feland ("Feland"),[8] and requested leave to file a motion seeking the appointment of one of its proposed candidates.

Finding the parties' appraisers were unable to agree on an umpire, the Court construed the parties' Status Reports as cross motions requesting the Court appoint an umpire from the candidates proposed by the parties. The Court indicated it was inclined to appoint either Johnson (Plaintiff's candidate) or Feland (Defendant's candidate) and set a May 3, 2024 deadline for the parties to file statements in support of their proposed candidates and objections to the opposing party's proposed candidate.[9]

---

[4] *See* Jan. 17, 2024 Mem. & Order & Notice to Show Cause, ECF No. 20.

[5] ECF No. 21.

[6] ECF Nos. 29 and 30.

[7] Plaintiff attached Johnson's Curriculum Vitae to its Status Report. ECF No. 29-1, at 14–36.

[8] Defendant attached Feland's Expert Resume to its Status Report. ECF No. 30-2, at 3–4.

[9] ECF No. 31.

On May 2, 2024, Plaintiff and Defendant filed their Statements on Umpire Selections.[10] In response to an informal request from the Court, the parties subsequently advised the Court that each party's appraiser could submit his statement of loss to the umpire ultimately appointed by the Court within 30 days of the umpire's appointment, provided the appraiser is permitted to inspect the property in a prompt manner. Both parties also indicated their proposed umpire candidate could likely render a decision within 30 days or less after receipt of the appraisers' statements of loss.

## II.    Analysis

While the Insurance Policy requires the parties to select a "competent and impartial" appraiser, it is silent with respect to any criteria for the selection of an umpire if the appraisers cannot agree on one.  In its statement on umpire selection, Defendant cites the following three criteria as significant to a court called upon to select an umpire for an appraisal: (1) experience with the appraisal of the type of loss at issue, (2) lack of bias, and (3) proximity to the location at issue and availability of time to devote to the project.[11] Plaintiff does not dispute these criteria and adopts it as the standard the Court should apply here.  Finding no applicable controlling authority on the issue, the Court will use these criteria in making its umpire selection. The Court is further guided by the umpire's primary role, which is "not to undertake a new, third appraisal, but to evaluate the appraisers' completed appraisals, and their differences. This is more akin to adjudicating competing experts' opinions than to preparing a third, independent opinion or

---

[10] ECF Nos. 32–34.

[11] In its Statement on Umpire Selection (ECF No. 32), Defendant cites two cases supporting these three criteria. *51 Roses Mill LLC v. Am. Guar. & Liab. Ins. Co.*, No. NNHCV216115479S, 2023 Conn. Super. LEXIS 254, 2023 WL 2454446, at *2 (Jan. 20, 2023); *and Pennsylvania Lumbermens Mut. Ins. Co. v. Buettner Bros. Lumber Co.*, No. CV-12-S-865-NE, 2012 U.S. Dist. LEXIS 66345, 2012 WL 1748028, at *2 (N.D. Ala. May 11, 2012). While these cases are not controlling precedent, the Court finds them helpful and instructive in deciding which candidate to appoint as umpire.

appraisal. This role is aptly filled by an arbitrator with experience weighing parties' competing submissions."[12]

The first criterion for umpire selection is the candidate's experience with the type of loss at issue, which in this case is hail damage to the roof of a commercial property. In evaluating this criterion, the Court has reviewed Johnson's Curriculum Vitae ("CV") and Feland's Expert Resume ("Resume"), as well as the parties' statements and submissions regarding the qualifications of their respective umpire candidates.

Johnson is an insurance consultant and adjuster with more than 20 years of experience, including more than 15 years of experience as an insurance carrier and policyholder appraiser. He has adjusted claims in 19 states on behalf of more than 70 insurance companies, including the evaluation of more than 6,000 roof systems, and is frequently called upon to serve as a neutral appraisal umpire across the country. Feland has more than 40 years of experience in the roofing business. He does not have a lengthy resume like Johnson but his experience is more diverse. Feland has worked as a roofing foreman, as an adjuster for an insurance company, as a field adjuster and field adjuster trainer for an insurance company, and for the past 20+ years as the owner of a roofing company near Oklahoma City, Oklahoma. He has worked as an appraiser for various unidentified insurance companies and has served as an umpire in several unidentified cases. Neither Johnson nor Feland indicates that he has worked as an appraiser or umpire in Kansas.

The Court finds both umpire candidates have experience relevant to valuing damages to roof systems. However, the breadth of Johnson's relevant experience is clearly much greater than

---

[12] *Kane v. Travelers Pers. Ins. Co.,* No. 1:22-CV-2811-WJM-MEH, 2023 WL 4408255, at *2 (D. Colo. July 7, 2023) (quoting *PB Prop. Holdings, LLC v. Auto-Owners Ins. Co.*, 2018 WL 10879450, at *2 (D. Colo. Jan. 3, 2018)).

Feland's. Johnson has extensive experience serving as an appraiser and umpire around the country. His CV lists eleven courts by which he has been approved and/or appointed as an expert witness or Neutral Appraisal Umpire, plus six pages of appointments related to insurance appraisals. In contrast, Feland's Resume states only that he has "worked as an appraiser for various insurance companies on different cases at different times and [has] also served as an umpire on several cases." He fails to identify any specific court, case, or matter in which he has been appointed as an appraiser or umpire. The Court finds Johnson is the better qualified candidate, demonstrating far more experience than Feland pertinent to the role as an umpire in this case. This criterion therefore weighs heavily in favor of Johnson.

The second criterion for selection of an umpire is lack of bias in favor of or against a party or insureds or insurers generally. While Defendant argues some of Johnson's seminar titles and his apparent "affinity" toward the Merlin Law Group may suggest a bias against insurers, Defendant fails to "connect the dots" with these unsubstantiated assertions so the Court is unpersuaded by this argument. Moreover, had Defendant's candidate, Feland, provided any details regarding the insurance companies for which he has worked as an appraiser or for whom he has served as an umpire, such unsubstantiated assertions might well be lodged against Feland as well. The Court presumes both candidates could serve as the umpire without bias in favor or against a party or the insureds or insurers generally. This criterion therefore does not weigh in favor of either candidate.

As for the third criterion, proximity to the location at issue and availability of time to devote to the project, neither Johnson nor Feland lives in Wichita, Kansas, or even in Kansas. Both candidates are a significant distance from the property being appraised (according to Defendant,

Feland 159 miles; Johnson 568 miles).[13] Although Feland's business in Oklahoma is more than 400 miles closer than Johnson is located to the subject property, the Court has been provided no information that would cause it to conclude that either Feland or Johnson has any knowledge of the local costs of materials and labor, applicable local building statutes, codes and ordinances, or familiarity with local commercial building values in Wichita, Kansas. As for availability of time to devote to this project, both candidates have indicated, if appointed as the umpire in this case, they could complete their work in about the same amount of time. The Court therefore concludes this criterion does not weigh in favor of either candidate.

Considering the three criteria discussed above, the Court finds that the first criterion weighs heavily in favor of appointing Johnson, while the second and third criterion do not favor either Johnson or Feland. Accordingly, the Court concludes that Johnson should be appointed as the umpire under the terms of the Insurance Policy.

## RECOMMENDATION

Based upon the Court's review of Johnson's CV, Feland's Resume, as well as the parties' statements and submissions regarding the qualifications of their respective umpire candidates, the Court concludes that Plaintiff's candidate, Toby Johnson, is the best choice to serve as the umpire. Accordingly,

**IT IS HEREBY RECOMMENDED** that Toby Johnson be appointed as umpire under the terms of the Insurance Policy.

---

[13] ECF No. 32, at 3.

**IT IS FURTHER RECOMMENDED** that Johnson be reminded of his responsibility as umpire not to undertake a new, third appraisal, but to evaluate the appraisers' completed appraisals, and their differences.

**IT IS FURTHER RECOMMENDED** that the parties be ordered to cooperate with the appraisers and the appointed umpire in all respects, including insuring timely access to the subject property as needed.

**IT IS FURTHER RECOMMENDED** that each party's appraiser be ordered to produce his statement of loss to the umpire **within thirty (30) days** of the date the final order appointing the umpire is filed.

**IT IS FURTHER RECOMMENDED** that the umpire be ordered to complete the required work and deliver to the Court and parties his written decision as to the amount of loss in accordance with the subject Insurance Policy **within forty-five (45) days** of the date the umpire receives both appraisers' statements of loss.

Dated May 10, 2024, at Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge